IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| KOLEA BURNS, Personal Representative of the Estate of Emerson Crayton, Jr., Deceased, *et al.*, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 3:14-cv-350-MHT-PWG |
| CITY OF ALEXANDER CITY, *et al.*, | ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

This case arises from events related to the shooting death of Mr. Emerson Crayton, Jr., who was allegedly shot and killed by Defendant Tommy Maness, a police officer employed by Defendant the City of Alexander City, Alabama. The Plaintiffs allege that Defendant Maness shot Mr. Crayton five or six times while Crayton was in his car outside of a Huddle House restaurant.

This lawsuit is brought by two individuals: Kolea Burns, as the Personal Representative of the Estate of Emerson Crayton, Jr., deceased, and G.C., Mr. Crayton's minor child. There are six counts set out in the Second Amended Complaint: Counts One and Two are for constitutional violations, asserted through

1

the remedial vehicle of 42 U.S.C. § 1983, of the Fourth Amendment (Count One; "pattern and practice" failure to train and excessive force) and Fourteenth Amendment (Count Two; unlawful search and seizure by excessive force) against Defendants the City of Alexander City and Tommy Maness (collectively "Alexander City Defendants"). Count Three is a state law claim for wrongful death against all Defendants. Count Four asserts a claim race discrimination in a place of public accommodation under 42 U.S.C. § 2000a against Defendants D&L Foods, Inc., Huddle House, Inc., Lynn Patterson, LeGina Watson, and Daniel Yates (collectively "Huddle House Defendants"). Count Five is a race discrimination claim brought under 42 U.S.C. § 1981, asserted through § 1983, against the Huddle House Defendants. Count Six contains a state law claim for negligent failure to train against all Defendants. The claims are brought jointly by both Plaintiffs.

Before the court are the following motions: (1) a motion to dismiss the Second Amended Complaint filed by the Huddle House Defendants (Doc. 49); (2) a motion to dismiss the Second Amended Complaint filed by the Alexander City Defendants (Doc. 52); (3) separate motions to strike Plaintiffs' exhibits and affidavits filed in opposition to the motions to dismiss by the Alexander City Defendants (Doc. 60) and the Huddle House Defendants (Doc. 63); and Plaintiffs' motion for discovery (Doc. 65). On April 1, 2015, this matter was referred to the undersigned by U.S. District

Judge Myron H. Thompson for disposition or recommendation on all pretrial matters. (Doc. 71). *See also* 28 U.S.C. § 636(b); Rule 72, Fed. R. Civ. P.; *United States v. Raddatz,* 447 U.S. 667 (1980); *Jeffrey S. v. State Board of Education of State of Georgia,* 896 F.2d 507 (11th Cir. 1990). As memorialized in the Scheduling Order entered on May 1, 2015, "[t]he parties have consented to the undersigned Magistrate Judge entering a dispositive order on currently pending motions to dismiss." (Doc. 76 at p. 1). The parties reserve consent on other matters.

For the reasons stated herein, the motions to dismiss will be **GRANTED IN PART** and **DENIED IN PART**. The motions to strike will be **GRANTED**, and the motion for discovery is **MOOT**.

## I.    BACKGROUND AND FACTS[1]

"[I]n the early morning hours" of Saturday, March 8, 2014, Mr. Crayton patronized a Huddle House restaurant in Alexander City, Alabama. (Doc. 50 at p. 2). He ordered food to-go. While waiting for his meal, Mr. Crayton was confronted by a waitress. She accused Mr. Crayton of being too loud and demanded that he keep his voice down. Mr. Crayton disagreed with her assessment, but lowered his voice

---

[1] These are the facts for purposes of ruling on the pending motions to dismiss. They are gleaned exclusively from the allegations in the Second Amended Complaint. The court did not consider any of the exhibits submitted by Plaintiffs in opposition to the motions to dismiss. *See* Fed. R. Civ. P. 12.

nonetheless. Another waitress said "something rude" to Mr. Crayton, to which he replied, "Y'all can keep my money, and keep my food; I'm leaving." (Doc. 48 at p. 4, ¶ 13). As he left the restaurant, one waitress said, "F___ you." (Doc. 48 at p. 4, ¶ 14) (deleted letters and redacted word in original). Mr. Crayton responded with, "F___ you, back," before a Huddle House employee handed him his food and he exited the restaurant. (*Id.*).

Several things then happened within a short time frame. Mr. Crayton walked from the restaurant to his car, got into the automobile, started the car, and backed up as though to exit the parking lot adjacent to the Huddle House. While he was doing those things, a Huddle House employee contacted the Alexander City Police Department. Defendant Maness, who at that time was a police officer, was on foot and in very close proximity to the restaurant. He ran to the Huddle House whereupon "certain representatives" of the restaurant informed Maness that Crayton "had a gun on him, and had threatened to shoot someone and/or blow up the Huddle House restaurant." (Doc. 48 at p. 5, ¶ 18). Plaintiffs aver that information was false. Maness then killed Crayton by firing five or six bullets into Crayton's car. Plaintiffs very carefully allege that Mr. Crayton posed no threat to Maness and that Crayton was not moving so as to strike Maness with his car.

## II.    MOTION TO DISMISS STANDARD OF REVIEW

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the Complaint against the legal standard set forth in Rule 8: "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).[2]  Additionally, "[e]xhibits attached to the complaint are treated as part of the complaint for Rule 12(b)(6) purposes.  *Page v. Postmaster Gen. & Chief Exec. Officer of U.S. Postal Serv.*, 493 F.App'x 994, 995 (11th Cir. 2012).  *Accord Berry v. Keller*, 157 F. App'x 227, 228 (11th Cir. 2005) ("Documents attached to the complaint are treated as part of the allegations." (citation omitted)).  Considering these exhibits does not require a Rule 12(b)(6) motion to dismiss to be converted to a Rule 56 motion for summary judgement.  *See id.*  Only when "matters outside the pleadings are presented by the parties and district court" must the motion be converted.  *Id.* (quoting *Speaker v. U.S. Dep't of Health and Human Servs. Ctr. for Disease Control & Prevention*, 623 F.3d 1371, 1379 (11th Cir. 2010)).  In the present case and in response to a court order, Plaintiffs submitted evidence outside of the pleadings in opposition to the motions to dismiss; however, that evidence has not been considered by the court and does not inform this decision in any way whatsoever.

When evaluating a motion to dismiss pursuant to Rule 12(b)(6), the court must

---

[2] *Nota bene*: The provisions of Rule 9, Fed. R. Civ. P., are not applicable to this case.

take "the factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff." *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Determining whether a complaint states a plausible claim for relief [is] ... a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 663 (alteration in original) (citation omitted). "[F]acial plausibility" exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The standard also "calls for enough facts to raise a reasonable expectation that discovery will reveal evidence" of the claim. *Twombly*, 550 U.S. at 556. While the complaint need not set out "detailed

6

factual allegations," it must provide sufficient factual amplification "to raise a right to relief above the speculative level." *Id.* at 555.

"So, when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, 'this basic deficiency should ... be exposed at the point of minimum expenditure of time and money by the parties and the court.'" *Twombly*, 550 U.S. 558 (quoting 5 Wight & Miller § 1216, at 233-34 (quoting in turn *Daves v. Hawaiian Dredging Co.*, 114 F.Supp. 643, 645 (D. Haw. 1953)) (alteration original). "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679 (citing *Twombly*, 550 U.S. at 556).

> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Iqbal*, 556 U.S. at 679.

## III.   DISCUSSION

### A.   Plaintiffs' State Law Claims are Subsumed by Alabama's Wrongful Death Statute and Plaintiff G.C. Lacks Standing to Pursue State Law Claims.

All Defendants argue that Plaintiff G.C. lacks standing to pursue either the state or federal claims asserted in this case. The Defendants also collectively argue

that, as a matter of law, all state law claims are subsumed by Alabama's wrongful death statute, Ala. Code § 6-5-462.

Defendants correctly argue that, under Alabama law, "only the personal representative of the decedent's estate has standing to pursue" the sole state law claim that survived Mr. Crayton's death, that for wrongful death.  (Doc. 53 at p. 5; *see also* Doc. 49 at pp. 5-6).  Alabama law is clear that, when an individual dies before bringing a lawsuit, all state law claims that individual could have asserted prior to his demise are subsumed by a claim for wrongful death.  *See Bassie v. Obstetrics & Gynecology Assocs. of Northwest Ala., P.C.*, 828 So.2d 280, 282 (Ala. 2002) ("a deceased's unfiled tort claims do not survive the death of the putative plaintiff[]"); Ala. Code §§ 6-5-410, 6-5-462.  None of the state law claims in this lawsuit were brought before Mr. Crayton's death.

As Defendants argue, it is well-established that Alabama law allows only the personal representative of an estate to have standing to sue for wrongful death.  *See Tucker v. Molden*, 761 So.2d 996, 998 (Ala. 2000).  Therefore, Plaintiff Kolea Burns, as the Personal Representative of the Estate of Emerson Crayton, Jr., deceased, is the only proper party sue the Defendants, and the state law claim is limited to one for wrongful death.  Plaintiff G.C., who is not the personal representative of Mr. Crayton's estate, lacks standing to bring any state law claims, including one for

wrongful death. All state law claims brought by Plaintiffs, except the claim for wrongful death by Plaintiff Burns, are due to be dismissed.

### B.   Plaintiff G.C. Cannot Maintain Federal Claims

The question of whether Plaintiff G.C. may bring the federal claims asserted in this case is properly determined by looking to Alabama law. The federal claims in this lawsuit are brought under statutes that undisputedly do not have a survivorship provision. As such, the Defendants argue that the court must look to 42 U.S.C. § 1988, the Supreme Court's decision of *Robertson v. Wegmann*, 436 U.S. 584 (1978), and the Eleventh Circuit's decision of *Estate of Gilliam*, 639 F.3d 1041 (11th Cir. 2011) for the proposition that, because of the deficiency in the federal statutes as to survivorship, Alabama law controls where it is not inconsistent with federal law. *Robertson*, 436 U.S. at 588, *Gilliam*, 639 F.3d at 1045.

The scope of *Gilliam* and the relationship of Alabama's wrongful death statute with § 1983 has recently been discussed as follows:

> Section 1983 does not have a survivorship provision. *Estate of Gilliam ex rel. Waldroup v. City of Prathville*, 639 F.3d 1041, 1045 (11th Cir. 2011). Due to this "deficiency," the survivorship of an action brought pursuant to § 1983 is governed by 42 U.S.C. § 1988(a), which provides that where federal law is "deficient," the state law of the forum applies to the extent it is not inconsistent with federal law. *Estate of Gilliam*, 639 F.3d at 1045. The Eleventh Circuit has held that Alabama's survivorship statute, Ala.Code § 6-5-462, applies to § 1983 actions. *See id.* at 1046–50; *see also Sawyer v. Collins*, 2014 WL 710804, at *16

(S.D. Ala. Feb. 25, 2014). Under that provision, a deceased's unfiled tort claims do not survive his death. Ala.Code § 6-5-462; *see also Estate of Gilliam*, 639 F.3d at 1046; *Bell v. City of York, Alabama*, 2013 WL 1352022, at *27 (N.D. Ala. Mar. 29, 2013). However, "when a constitutional violation actually causes the injured party's death, a § 1983 claim can be asserted through the Alabama wrongful death statute, Ala.Code § 6-5-410." *Estate of Gilliam*, 639 F.3d at 1047; *see also Bell v. Shelby Cnty., Alabama*, 2013 WL 2248247, at *13 (N.D. Ala. May 21, 2013).

*James v. City of Huntsville, Ala.*, 2015 WL 3397054 (N.D. Ala. May 26, 2015).

As to the § 1983 claims, *Gilliam* provides authority that Alabama's wrongful death statute applies by virtue of § 1988. Therefore, Plaintiff G.C. does not have standing to assert those claims under Alabama law as she is not the personal representative of Mr. Crayton's estate. The constitutional claims and the § 1981 claim, asserted through the remedial vehicle of § 1983, are only properly advanced by Plaintiff Burns. Consistent with the reasoning in *Gilliam* that Ala. Code § 6-5-462 is not inconsistent with the purposes of § 1983, that code section is likewise not inconsistent with the civil rights laws codified at 42 U.S.C. § 2000a, nor do Plaintiffs argue otherwise. As discussed in *Gilliam*, and similar to § 1983, a plaintiff representing a decedent's estate can be compensated for violations of § 2000(a) through Alabama's wrongful death law. Accordingly, Plaintiff G.C. lacks standing to prosecute those claims as well, but the claims can be maintained by Plaintiff Burns. All federal claims brought by Plaintiff G.C. are due to be dismissed for lack of

standing.

### C.   State Law Wrongful Death Claim Against the Huddle House Defendants

The core argument by the Huddle House Defendants in favor of dismissal of the wrongful death claim is that, even if the allegations of the Second Amended Complaint are true,[3] the Huddle House Defendants maintain that the bullets fired by Defendant Maness killed Mr. Crayton, creating an intervening act; therefore, the Huddle House Defendants contend they cannot be said to have "caused" Crayton's death such that they face liability under the plain language of Alabama's wrongful death statute, Ala. Code § 6-10-410.   (Doc. 50 at pp. 9-11).   This argument is premised on citations to a false imprisonment and a malicious prosecution case, respectively, in which Alabama courts discuss "bad faith."  *Yabba v. Ala. Christian Acad.*, 823 F.Supp.2d 1247, 1251 (M.D. Ala. 2011); *Pannell v. Reynolds*, 655 So.2d 935 (Ala. 1994).   The Huddle House Defendants rely upon authority that are not wrongful death cases nor do these cases provide guidance on the matter of causation under Ala. Code § 6-10-410.  Also, the Huddle House Defendants admit they cannot locate case law supporting their position under the particular facts of this case.  (Doc.

---

[3] The Huddle House Defendants deny that anyone told Maness that Crayton had a gun, threatened to shoot someone, or threatened to blow up the restaurant.  (Doc. 50 at p. 12).  Those denials, however, are directly contradictory to Plaintiffs' Second Amended Complaint, which necessarily provides the controlling factual basis for this decision on the motions to dismiss.

50 at p. 11) ("The Huddle House Defendants have been unable to find any specific case law with similar facts as those alleged by the Plaintiffs in this case.").

In this instance, the determination is reduced to the adequacy, for purposes of notice pleading, of Plaintiffs' allegations against the Huddle House Defendants as to causation.  Plaintiffs argue that the acts of the Huddle House Defendants are alleged to have caused Crayton's death regardless of who fired the fatal shot. (Doc. 57 at pp.7-8).  As to the Huddle House Defendants' part in Mr. Crayton's death, Plaintiffs allege:

> As a proximate result of said negligent training and supervision, and/or lack thereof, and in an act of negligence and/or wantonness on his own part, and in violation of the decedent's constitutional rights, the Defendant Maness wrongfully opened fire on the decedent Emerson Crayton, Jr. and wrongfully killed him. Plaintiff alternatively avers that, if Defendant Maness believed he needed to keep the decedent Junior from leaving the Huddle House parking lot, he (Maness) could have shot out the tires of Junior's car, thus rendering it inoperable, but Defendant Maness negligently failed to do so. Alternatively, Defendant Maness could have easily moved, as decedent Crayton's vehicle had barely begun to move at the time Defendant Maness shot him.

(Doc. 48 at ¶ 22). Plaintiffs also aver that the Huddle House Defendants, namely those individuals who contacted the police and spoke with Maness on the night of Mr. Crayton's death, "incited the Defendant Maness and Alexander City by providing them with false information, and, in doing so, proximately caused ... the shooting death" of Mr. Crayton.  (Doc. 48 at ¶ 24).  The allegedly false information, according

to Plaintiffs' pleading, was that Mr. Crayton was armed and threatening to shoot someone or blow up the Huddle House restaurant. (Doc. 48 at ¶ 43).

Also, Plaintiffs allege that the Huddle House Defendants, despite serving food to black customers, "developed a method of operation, and atmosphere, and a reputation, that were often unfriendly and hostile to black customers ..." and that those Defendants treat black customers "with less respect and dignity than white customers[.]" (Doc. 48 at ¶¶ 25-26). It is Plaintiffs' position that the alleged practice and culture at the Huddle House restaurant, sanctioned or caused by the Huddle House Defendants, rises to the level of racial discrimination and a denial of equal access to a public accommodation to black customers, and that those practices or culture caused Mr. Crayton's death.[4] (Doc. 48 at ¶¶ 25-27).

In viewing the allegations of the Second Amended Complaint in a manner consistent with the applicable standard of review on a motion to dismiss and in the

---

[4] The Huddle House Defendants also argue that the race discrimination claims are due to be dismissed because they can only be asserted through Alabama's wrongful death statute and, according to these Defendants, the facts of the Second Amended Complaint do not suffice to show causation. Plaintiffs' Second Amended Complaint, however, alleges that the practice of discrimination by the Huddle House Defendants led to or caused Mr. Crayton's death — *i.e.*, it is one of Plaintiffs' theories of liability that, if the Huddle House Defendants were not racially discriminatory to black customers, the Huddle House employees would not have contacted the police and falsely stated that Mr. Crayton was armed and threatening to blow up the restaurant and, if those events never took place, that Defendant Maness would not have shot and killed Mr. Crayton. Those allegations of fact are contrary to the Huddle House Defendants' reading of the Second Amended Complaint, which they argue does not allege that they caused Mr. Crayton's death, and are sufficient to allow the race discrimination claims to proceed to discovery.

absence of binding authority to support the Huddle House Defendants' position on causation, this wrongful death claim is due to survive the motion to dismiss.

### D.   Official Capacity Claims Against Defendant Maness are Redundant of the Claims Against the City of Alexander City

As a matter of law, the official capacity claims against Defendant Maness are due to be dismissed as redundant of the federal claims asserted against the municipality. *See Monell v. Dep't of Social Services*, 436 U.S. 658, 690 n.55 (1978); *Busby v. City of Orlando*, 931 F.2d 764 (11th Cir. 1991).  Plaintiffs argue, relying on *Williams v. City of Montgomery*, 21 F.Supp.2d 1360 (M.D. Ala. 1998) (Albritton, J.), that it would be premature to dismiss the official capacity claims at this early stage of the proceedings, and that they should be allowed discovery.  However, *Williams* did not involve federal claims asserted against a municipal employee, only state law claims, and Judge Albritton held the rule articulated in *Busby* and *Monell* was "inapplicable" to the facts of *Williams*.  21 F.Supp.2d at 1368.  Here, Plaintiffs clearly assert identical official capacity federal claims against both Maness and the City of Alexander City.  In the present case, *Monell* and *Busby* apply as to the official capacity claims against Maness.  The Alexander City Defendants' motion to dismiss is due to be granted on this point.

**E.     Plaintiffs' Fourteenth Amendment Claim is Due to be Dismissed in Favor of the Fourth Amendment Claim**

Relying on *Graham v. Conner*, 490 U.S. 386, 395 (1989), the Alexander City Defendants contend that the Fourteenth Amendment claims are due to be dismissed in favor of the more specific Fourth Amendment claims. *See Graham v. Conner*, 490 U.S. 386, 395 (1989).   Plaintiffs argue that, "[a]lthough [the Alexander City Defendants] may ultimately be correct, this Court can make that determination only after evidence has been developed and presented potentially on summary judgment." (Doc. 56 at p. 9).   However, Plaintiffs do not provide legal authority for their argument that they are entitled to discovery or that *Graham* is limited to an analysis of evidence at summary judgment and not to allegations on a motion to dismiss. There is no support for Plaintiffs' argument in the text of *Graham*.   Also, Plaintiffs have not identified any allegations in the Second Amended Complaint that could distinguish their Fourteenth Amendment claim from the Fourth Amendment claim for purposes of this analysis or discovery.

The holding in *Graham* is clear and precise:

> *all* claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a [Fourteenth Amendment] 'substantive due process' approach."

490 U.S. at 395 (emphasis in original).  While *Graham* came to the Supreme Court after a jury trial on a developed evidentiary record, that does not assist Plaintiffs in their request for discovery nor does that posture dispel the legal conclusion reached by the Supreme Court that Fourth Amendment jurisprudence, not the Fourteenth Amendment, governs.  Plaintiffs' request for discovery to determine whether there might be a cognizable Fourteenth Amendment claim is foreclosed as a matter of law by *Graham*.  Accordingly, Plaintiffs' Fourteenth Amendment claim is due to be dismissed, and the Alexander City Defendants' motion to dismiss is due to be granted on that claim.[5]

### F.    Section 1983 Municipal Liability Claims

The Alexander City Defendants argue that Plaintiffs "fail[] to meet the fundamental requirements for establishing municipal liability." (Doc. 53 at p. 10).  These Defendants evoke the defenses offered by *Monell*, 436 U.S. 658, *City of Canton v. Harris*, 489 U.S. 378 (1989), and *Busby v. City of Orlando*, 931 F.2d 764 (11th Cir. 1991). In *Monell*, the Supreme Court concluded that

---

[5] The Eleventh Circuit recently discussed, in an unpublished opinion, the finding by a district court that a substantive due process claim "could lie as an alternative theory of recovery" in an excessive force, wrongful death case if a jury could conclude that the officer intentionally caused harm "unrelated to the legitimate objective of arresting" the individual, and noted that such a theory "may have legal merit in the abstract."  *Gaillard v. Commins*, 562 F'Appx. 870, 877 (11th Cir. 2014).  Here, there are no allegations that Maness shot Crayton for a reason unrelated to the objective of detaining him.

> a municipality cannot be held liable solely because it employs a
> tortfeasor ... a municipality cannot be held liable under § 1983 on a
> respondeat superior theory ... [except] when execution of a
> government's policy or custom, whether made my its lawmakers or by
> those whose edicts or acts may fairly be said to represent official policy,
> inflicts the injury that the government as an entity is responsible under
> § 1983.

*Monell*, 436 U.S. at 691-92, 694.  As the Alexander City Defendants correctly set out, there must be a "causal link between the custom or policy" and the constitutional claim asserted by a plaintiff.  *Fundiller v. City of Cooper City*, 777 F.2d 1436, 1442 (11th Cir. 1985); *see also City of Oklahoma City v. Tuttle*, 471 U.S. 808, 819-821 (1985).  Per *City of Canton*, the municipality must have acted deliberately.

The Eleventh Circuit has determined that, "to impose § 1983 liability on a municipality, a plaintiff must show: (1) that his constitutional rights were violated; (2) that the municipality has a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004) (citing *Canton*, 489 U.S. at 388).  "In order for a plaintiff to demonstrate a policy or custom, it is 'generally necessary to show a persistent and wide-spread practice.'" *McDowell*, 392 F.3d at 1290 (quoting *Wayne v. Jarvis*, 197 F.3d 1098, 1105 (11th Cir. 1999).  "This prevents the imposition of liability based upon an isolated event." *Id.* (citing *Depew v. City of St. Marys, Georgia*, 787 F.2d 1496 (11th Cir. 1986)).

As to the first element, on the allegations of the Second Amended Complaint, Plaintiffs sufficiently allege a Fourth Amendment violation.  The pleading is written to allege that Mr. Crayton posed no threat to Defendant Maness at the time of the shooting, and the Alexander City Defendants do not argue that Crayton did.  Where there is no danger to the police officer, Defendant Maness was "not entitled to use any force at that time."  *Porter v. City of Enterprise*, 2013 WL 1294632, at *2 (M.D. Ala. Mar. 28, 2013) (Thompson, J.) (quoting *Hadley v. Gutierrez*, 526 F.3d 1324, 1330 (11th Cir. 2008)).  As such, accepting as true the allegations of the Second Amended Complaint for purposes of ruling on the motions to dismiss, Maness having fired five or six bullets into Mr. Crayton's automobile without being entitled to use any force is sufficient to assert a violation of Crayton's Fourth Amendment right to be free from excessive force.

The Alexander City Defendants do not expressly present their arguments under the *McDowell* rubric, but instead make two broad arguments against Plaintiffs' municipal liability claims.  Both arguments, however, implicitly speak to the second and third prongs of *McDowell*, and are analyzed under that framework.  The parties disagree over whether the allegations are sufficient to place municipal liability at issue.

In their first argument, the Alexander City Defendants argue that the Plaintiffs'

Second Amended Complaint only sets out a conclusory allegation of municipal liability based on "negligent" failure to train and supervise Defendant Maness, instead of alleging facts that the purported failure to train rises to the level of a pattern of "deliberate indifference." (Doc. 53 at p. 12-13; citing Plaintiffs' Second Amended Complaint, Doc. 48 at ¶¶ 21, 32). The second argument, also speaking to the second and third elements of *McDowell*, is that Plaintiffs' Second Amended Complaint fails to meet the basic notice pleadings standards set out in Rule 8, Fed. R. Civ. P., *Twombly* and *Iqbal* such that the Alexander City Defendants assert they are not on notice of Plaintiffs' claims and the factual basis of those claims as to municipal liability for failure to train.

The first argument ignores Plaintiffs' use of the words "deliberate indifference" in the very same paragraph as the word "negligently" appears. (Doc. 48 at ¶ 21). It also, as Plaintiffs observe, omits other relevant allegations of the Second Amended Complaint that were not in previous pleadings, specifically paragraph 32(a)-(c). The Alexander City Defendants gloss over the language in the Second Amended Complaint that undercuts the argument. The court is obligated to accept the Second Amended Complaint as it is written. The pleading, when read in its entirety, alleges that Mr. Crayton's constitutional rights were violated by a deliberate and ongoing policy of failure to train Alexander City police officers in the use of lethal force and

that the alleged failure to train resulted in Mr. Crayton's death.  Plaintiffs aver that the policy is evidenced, in part, by two instances where Alexander City police used lethal force prior to Maness shooting Crayton.[6]  Furthermore, Plaintiffs allege that the failure to train is systemic and not a failure as to Maness alone.

As to the Alexander City Defendants' contention that the Second Amended Complaint does not satisfy the basic requirements of notice pleading, Plaintiffs argue that they have alleged enough at this point, in light of Judge Thompson's holding in *Porter*, *supra*, in which the plaintiffs brought a claim for § 1983 municipal liability against the City of Enterprise, Alabama.  *See Porter*, 2013 WL 1294632 (finding the allegations of a complaint sufficient to survive a motion to dismiss on a municipal

---

[6] The Alexander City Defendants seek to draw a line of distinction between events when police used lethal force that did not result in a death with the instant case, where Mr. Crayton allegedly was killed as a result of the force used by Defendant Maness.  That attempt at a distinction is effectively one without a difference.  The pertinent issue is the type of force used and the training or lack thereof associated with that force and not, as the Alexander City Defendants suggest, whether lethal force actually resulted in injury or death.

The Alexander City Defendants also invite the court to assess whether two other instances, assuming them to be similar to Mr. Crayton's death, is sufficient to evidence a pattern or practice of deliberate failure to train.  The court cannot  make a determination on the point at this juncture.  The number of complaints of excessive force or of previous instances of unlawful use of lethal force is not itself the benchmark; rather, it is the validity and similarity of the past instances of force that must be compared to the case at bar.  *Brooks v. Scheib*, 813 F.2d 1191, 1193, 1195 (11th Cir. 1987) ("[T]he number of complaints bears no relation to their validity" and it is the validity of an excessive force complaint that is pertinent.).  Because Plaintiffs allege the two prior instances of lethal force to have been unlawful, and there is nothing of record by which the court could find otherwise, the court assumes the validity of the complaints for ruling on the motions to dismiss and declines to address on these motions whether two valid complaints is sufficient as a matter of law to evidence a pattern.

liability § 1983 failure to train claim).  In *Porter*, the court found it significant that the complaint was worded to allege that the City of Enterprise "consistently ... ignored the use of excessive force during the course of an arrest" and that, focusing primarily on the use and providing a citation to the definition of the word "consistently," those allegations were sufficient to show, for purposes of notice pleading and ruling on a motion to dismiss, that the City of Enterprise was on notice of constitutional violations and did nothing to correct the problem.  2013 WL 1294632 at *4.

The complaint in *Porter* and the Second Amended Complaint in the present case are similar enough that *Porter* is persuasive.  Here, Plaintiffs allege that a deliberate indifference is at work in Alexander City based on what Plaintiffs contend are acts of unlawful uses of force prior to Mr. Crayton's death that were known to Alexander City, which is like enough to arguing a "consistent" failure by the City to train.  Upon consideration of *Porter*, the Alexander City Defendants' argument that the Second Amended Complaint is insufficient under *Twombly*, *Iqbal*, and Rule 8, Fed. R. Civ. P., is not compelling.  In addition, the allegations of the Second Amended Complaint satisfy the three *McDowell* factors.  Also like *Porter*, however, "whether or not such a policy actually existed and whether or not it caused the specific constitutional violations in this case remains to be seen."  *Id.*

Accordingly, the motion to dismiss the municipal liability claims is due to be denied.

### G.    Motions to Strike Affidavits (Docs. 60 & 63)

In opposition to the motions to dismiss, Plaintiffs submitted affidavits from Julian McPhillips, Jr. (Plaintiffs' counsel), Eric Hutchins (Plaintiffs' counsel), Filaizha Thompson, Adrin Russell, Tara Buckner, Nachica Johnson, and Renee Dollette (a second year law student working for Plaintiffs' counsel). According to Plaintiffs, the affidavits of record were filed in accordance with Judge Fuller's orders requiring Plaintiffs to "file a response [to the motions to dismiss the Second Amended Complaint] which **shall include a brief and any evidentiary materials** ...." (Docs. 51 & 54; Standard Briefing Orders) (emphasis added). It seems Plaintiffs supplied the affidavits, which include affidavits by two attorneys of record for Plaintiffs and one by a law student working for Plaintiffs' counsel testifying to facts at issue in this case or for the purpose of authenticating an audio recording, to comply with Judge Fuller's orders and to preserve the record. Defendants move to strike the affidavits as they are matters outside the four corners of the Second Amended Complaint and are not to be considered on a motion to dismiss pursuant to Rule 12, Fed. R. Civ. P. The parties do not seek to convert the motions to dismiss to Rule 56, Fed. R. Civ, P, motions, and the court is not inclined to do so.

As noted *supra*, the court has neither examined nor relied upon Plaintiffs' evidence when ruling on the motions to dismiss.  Because the exhibits are not necessary to the disposition of the motions to dismiss, the motions to strike are due to be granted.

### H.    Plaintiffs' Motion for Discovery (Doc. 65)

Plaintiffs' motion for discovery is premised on seeking to advance discovery during the automatic stay in effect while the court considers the motions to dismiss. The circumstances, however, have changed.  Since Plaintiffs filed the motion for discovery, the court permitted limited discovery.  Moreover, because the court has ruled on the motions to dismiss, the automatic stay is no longer in effect.  As such, Plaintiffs' motion is moot and this case will proceed to discovery on all remaining claims.

## IV.    CONCLUSION AND ORDER

For the reasons stated, it is **ORDERED**:

(1)    Plaintiffs' motion for discovery (Doc. 65) is **TERMED AS MOOT**;

(2)    The motions to strike filed by the Huddle House Defendants (Doc. 60) and the Alexander City Defendants (Doc. 63) are **GRANTED**;

(3)    The motion to dismiss filed by the Huddle House Defendants (Doc. 49) is **GRANTED IN PART AND DENIED IN PART**.  The motion is **GRANTED** in

that (a) Plaintiff G.C. lacks standing to bring the claims asserted in the Second Amended Complaint and all claims brought by G.C. are **DISMISSED WITH PREJUDICE**, and (b) all state law claims are **DISMISSED WITH PREJUDICE** with the exception that Plaintiff Kolea Burns, as the personal representative of the Estate of Emerson Crayton, Jr., deceased, maintains a state law claim for wrongful death against the Huddle House Defendants.  The motion to dismiss is otherwise **DENIED**;

(4)     The motion to dismiss filed by the Alexander City Defendants (Doc. 52) is **GRANTED IN PART AND DENIED IN PART**.  The motion is **GRANTED** in that (a) Plaintiff G.C. lacks standing to bring the claims asserted in the Second Amended Complaint and all claims brought by G.C. are **DISMISSED WITH PREJUDICE**, (b) all state law claims are **DISMISSED WITH PREJUDICE** with the exception that Plaintiff Kolea Burns, as the personal representative of the Estate of Emerson Crayton, Jr., deceased, maintains a state law claim for wrongful death against the Alexander City Defendants, (c) the Fourteenth Amendment claims are **DISMISSED WITH PREJUDICE**, and (d) the official capacity claims against Defendant Maness are **DISMISSED WITH PREJUDICE** as redundant of the claims asserted against the City of Alexander City.  The balance of the motion is **DENIED**;

(5)     Plaintiff Kolea Burns, as the personal administrator of the Estate of Emerson Crayton, Jr., deceased, is the sole named plaintiff in this lawsuit; and,

(6)     The parties shall proceed to discovery on Plaintiff Burns's remaining claims consistent with the Scheduling Order. (Doc. 76).

**DONE** and **ORDERED** this 5th day of June, 2015.

 /s/ Paul W. Greene
United States Magistrate Judge

25