IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, EASTERN DIVISION


| | | |
|---|---|---|
| MS. KOLEA BURNS, Administrator of the Estate of Emerson Crayton, Jr., and G.C., only child of her father Emerson Crayton, Jr., by her mother and next friend Kolea Burns, | ) ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) ) | CIVIL ACTION NO. 3:14cv350-MHT (WO) |
| CITY OF ALEXANDER CITY, a Municipal corporation, et al., | ) ) ) ) | |
| Defendants. | ) | |

OPINION & ORDER

This lawsuit arises out of a police officer's fatal
shooting of Emerson Crayton, Jr., outside of a Huddle
House restaurant in Alexander City, Alabama in 2014.
The issue before the court is whether it should approve
two settlements that would benefit decedent Crayton's
minor child.

The plaintiffs are Kolea Burns (administrator* of the decedent Emerson Crayton Jr.'s estate) and G.C. (Burns and Crayton's minor child and Crayton's only surviving child). There are two groups of defendants. The first consists of the so-called "Huddle House defendants": D&L Foods, Inc., Huddle House, Inc., Lynn Patterson, LeGina Watson, and Daniel Yates. The second consists of the so-called "Alexander City defendants": the City of Alexander City and Officer Tommy Maness.

The parties have presented two settlements to the court: one between Burns and the Huddle House defendants, and the other between Burns and the Alexander City defendants. Because both settlements are for the benefit of the minor, G.C., the parties have filed a motion for court approval of the settlements. For the reasons that follow, the motion will be granted and the settlements approved.

---

* In her initial complaint and throughout this litigation, Burns refers to herself as the "administratrix" of Crayton's estate. Because the gender of the estate's representative is irrelevant, the court refers to her as the "administrator" of the estate.

## I.   LEGAL STANDARD

"Alabama law requires that a court hold a fairness hearing before a minor plaintiff's case may be settled."   Adam v. Criswell, No. 13cv458, 2014 WL 813142, at *1 (M.D. Ala. Mar. 3, 2014) (Thompson, J.) (citing Large v. Hayes By and Through Nesbitt, 534 So. 2d 1101, 1105 (Ala. 1988)).   This hearing must involve "an extensive examination of the facts, to determine whether the settlement is in the best interest of the minor."   Large v. Hayes By and Through Nesbitt, 534 So. 2d 1101, 1105 (Ala. 1988); see also Adams, 2014 WL 813142, at *1; William E. Shreve, Jr., Settling the Claims of a Minor, 72 Ala. Law. 308 (2011).   Because a minor ordinarily cannot be bound by a settlement agreement, Hines v. Seibels, 86 So. 43, 44 (Ala. 1920); Shreve, Settling the Claims of a Minor, supra, at 309, a fairness hearing and approval of the settlement are required in order for a compromise to be "valid and

3

binding" and to "bar[] a subsequent action [by the
minor] to recover for the same injuries." Id. at 310.

## II.  BACKGROUND

### A.   Factual Background

This suit arises out of events that occurred at the
Huddle House in Alexander City, Alabama in the early
morning hours of March 8, 2014.  Plaintiffs allege that
Crayton was waiting for his meal when he got into a
disagreement with a Huddle House waitress, who had
accused him of being too loud.  After Crayton exchanged
words with another waitress who had involved herself in
the disagreement, he got up to leave, and witnesses
report that he stated, "Y'all can keep my money, and
keep my food; I'm leaving."

After being handed his food, Crayton went to his
car in the Huddle House parking lot.  In the meantime,
after a Huddle House employee had contacted the
Alexander City police department, Officer Maness was
summoned to the restaurant.  The plaintiffs allege that

several Huddle House employees falsely stated to Maness that Crayton was carrying a gun, had threatened to shoot someone, or had threatened to blow up the restaurant. Maness contends that he did not hear these allegations.

Crayton was backing out of his parking space at the Huddle House when Maness attempted to stop him. Maness then fired five or six bullets into Crayton's car, killing him.

## B. Litigation Background

The plaintiffs have pursued several claims in connection with Crayton's death. Against the Alexander City defendants, they brought a state wrongful-death claim and two federal claims, pursuant to 42 U.S.C. § 1983, under the Fourth and Fourteenth Amendments.

Against the Huddle House defendants, they brought state wrongful-death and negligent-failure-to-train claims. They also brought federal claims, including a claim for race discrimination in places of public

5

accommodation under Title II of the Civil Rights Act of 1964 (42 U.S.C. § 2000a), and, pursuant to § 1983, a claim for race discrimination in contractual dealings under 42 U.S.C. § 1981.

Some of these claims and G.C. were dismissed, leaving only estate-administrator Burns to pursue the remaining claims against both sets of defendants.

Administrator Burns reached a settlement with the Huddle House defendants and those defendants were dismissed pro tanto. This settlement is in the amount of $ 100,000. Out of this amount, Burns must pay her attorneys $ 28,500 in litigation expenses and 50 % of the remaining recovery in attorneys' fees pursuant to a contingent-fee contract. Thus, Burns, as administrator, will be entitled to $ 35,750 and her attorneys will split the remaining $ 35,750.

Administrator Burns later reached a settlement with the Alexander City defendants. This settlement is in the amount of $ 500,000. The contingent-fee arrangement is the same as in the Huddle House

settlement; having already paid the $ 28,500 litigation expenses, Burns, as administrator, should receive $ 250,000 and the attorneys will split the remaining $ 250,000 as fees.

Because the settlements were, in fact, solely for the benefit of G.C. as Crayton's only heir, the court granted a motion to amend the complaint to reinstate G.C. as a plaintiff for the limited purpose of considering the proposed settlements.  At the same time, it appointed Linda Benson as C.G.'s guardian ad litem and one of the plaintiffs' attorneys, Eric Hutchins, as conservator.  A pro ami hearing was held on May 17, 2016.

### III. DISCUSSION

The court will first address whether it should even consider the settlements for approval.  And, if so, it will then discuss whether it should approve them.

7

### A.   Appropriateness of Even Considering the Settlements

Two aspects of the Huddle House settlement warrant discussion: the nature of the parties' <u>request</u> for approval and the nature of the <u>claim</u> at issue in the settlement.   As to the nature of the request, the parties essentially seek retroactive approval of the settlement, for the Huddle House defendants have already been dismissed and the settlement proceeds partially disbursed.   At the time of the resolution of this settlement, the plaintiffs' attorneys did not understand Alabama law to require a pro ami hearing to settle a minor's wrongful-death claim.   Not until after a court-appointed guardian ad litem had later informed counsel for the Huddle House defendants that she was of the opinion that court approval was necessary, did Huddle House counsel even consider whether such approval was necessary or prudent.

The timing of the parties' request does not appear to be an obstacle to the court's consideration of the proposed settlement.   The parties have jointly

**8**

expressed an interest in having the court consider the proposed settlement, and even a retroactive approval by the court can ensure that the interests of the minor and the other parties involved are protected. That the funds have already been partially distributed does not counsel against consideration of the settlement agreement either. The court will therefore reinstate the Huddle House defendants as parties for the limited purpose of the court's consideration of their settlement.

The court now turns to the nature of the claim at issue in the Huddle House settlement. The sole claim for that settlement was the plaintiffs' state wrongful-death claim. The guardian ad litem refers to this court's opinion in McCall v. Reed, ____ F.Supp.3d ____, 2015 WL 4067032 (M.D. Ala. July 2, 2015) (Thompson, J.), as justification for consideration of the settlement. McCall discussed a settlement encompassing both a federal claim (under 42 U.S.C. § 1983) and a state claim (for wrongful death).

_McCall_, _____ F.Supp.3d at _____, 2015 WL 4067032, at *1. Under those facts, this court explained, "it is unclear whether a minor is a proper party in an action alleging deliberate indifference under federal constitutional law as well as wrongful death under Alabama law." _Id._ at *3.  This lack of clarity arose out of the fact that minors are not proper parties to wrongful-death cases in Alabama, which permit only punitive damages, but they are proper parties to a federal claim under § 1983, which permits compensatory damages for family members.  _Id._  This court found it appropriate to hold a pro ami hearing in that case due to the ambiguity of the law on the issue and explained that the minor, as "the sole beneficiary of a settlement, ... should be protected through a pro ami hearing." _Id._  Like the minor in _McCall_, G.C. is the sole intended beneficiary of the Huddle House settlement.  However, unlike the settlement in _McCall_, the settlement with the Huddle House defendants encompasses only a state wrongful-death action, to which G.C. is not a proper

party under Alabama law, despite her being the beneficiary of the proceeds. Therefore, <u>McCall</u> does not resolve the issue presented by G.C. Nevertheless, because all involved here, including the minor's guardian ad litem, agree that the most prudent course of action is to have the court consider the Huddle House settlement, the court will do so--albeit out of prudence and not because the law requires such.

As to the settlement with the Alexander City defendants, this court's decision in <u>McCall</u> is squarely on point. Like the settlement at issue in <u>McCall</u>, the Alexander City settlement encompasses both a federal § 1983 and a state wrongful-death claim. For the reasons the court outlined in <u>McCall</u>, the court will address the fairness of the Alexander City settlement. <u>Id.</u> at ____, 2015 WL 4067032 at *3-*4.

## B.   Approval of the Settlements

The court now turns to whether the proposed settlements warrant its approval.  For reasons that follow, they do.

First, Burns made a logical decision to settle. This case involved complicated issues that would yield uncertain results on summary judgment and at trial.  As to the federal claim, there are these questions: whether the plaintiffs could overcome Officer Maness's qualified-immunity defense, <u>see</u> <u>Harlow v. Fitzgerald</u>, 457 U.S. 800 (1982); and whether they could establish that Crayton's death was caused by a municipal policy adopted by Alexander City, <u>see</u> <u>City of Canton v. Harris</u>, 489 U.S. 378, 388-89 (1989).  As to all claims, there is the question whether there is any factual basis to hold the Huddle House defendants liable for Maness's conduct.  And, as to all claims and all defendants, there is the question whether a jury would reject as not credible Maness's contention that he shot

12

Crayton because he believed Crayton was trying to run over him.

Additionally, the litigation, through trial and a possible appeal, could have lasted for several more years. Burns would have faced considerable legal obstacles over an extended period of time if she had chosen to proceed with this litigation. Thus, given these realities, her decision to settle was rational.

Second, the settlement amounts are reasonable. At the pro ami hearing, Burns testified that, after pursuing this litigation for over two years and attending numerous depositions, she was satisfied with the settlement amounts obtained. The guardian ad litem agreed that the settlement amounts are fair and that the settlements are in the best interests of the minor. After an independent review of the record, the court concurs with these assessments.

Third, to determine the reasonableness of attorneys' fees, the court must consider the factors set forth in <u>Peebles v. Miley</u>, 439 So. 2d 137

(Ala. 1983).   The proposed fees are reasonable in light of those factors: the representation involved in this case required considerable learning, skill, and labor for its proper discharge; and, for the reasons given above, the claims were quite risky, such that many attorneys would decline to take the case for a lesser fee.   Additionally, the plaintiffs' attorneys expended the necessary time on the litigation, having spent collectively several hundred hours meeting with experts, interviewing witnesses, taking and defending numerous depositions, and writing briefs; they incurred nearly $ 30,000 in litigation expenses determined by the guardian ad litem to be reasonable; and they have devoted time on this matter that could have been profitably spent on other matters.   Finally, while the 50 % contingency figure is at the high end, it was reasonable in this case, particularly in light of the above-described riskiness of the claims.   <u>See</u> <u>Sweeney</u> <u>v. Athens Reg'l Med. Ctr.</u>, 917 F.2d 1560, 1569 (11th Cir. 1990) (approving a 50 % contingency fee

given the difficulty of a case); <u>McCall</u>, _____ F.Supp.3d at _____, 2015 WL 4067032, at *4 (acknowledging that a 50 % contingency fee was "on the high end," but nonetheless finding it reasonable); <u>Large</u>, 534 So. 2d at 1106 (noting that a 50 % contingency fee has been upheld as a matter of law).

In sum, the settlements are fair, just, and reasonable and in the best interests of the minor.

## C. Personal Representative Fee

The plaintiffs also request that the court order payment of a 5 % personal-representative fee--to be taken from the settlement funds--to Burns for her work in pursuing this litigation in her capacity as administrator of Crayton's estate. At the pro ami hearing, Burns testified, and her attorneys confirmed, that she expended considerable effort toward the resolution of this case, including attending depositions and locating witnesses. While the court recognizes the amount of time and energy Burns has

15

devoted to pursuing this case, there is no basis for awarding such a fee under existing law.

In _Ex parte Rodgers_, 141 So. 3d 1038 (Ala. 2013), the Alabama Supreme Court foreclosed the payment of such a fee. It held that, "There is no allowance in the wrongful-death statute for payment of expenses of the administration of the decedent's estate, which would include personal-representative compensation." 141 So. 3d at 1043. In a special concurrence cited by the plaintiffs as justification for payment of a fee, Justice Bolin "propose[d] a potentially alternative method of providing personal-representative compensation for successfully prosecuting wrongful-death actions separate and apart from the estate duties of the personal representative," _id_. at 1044 (Bolin, J. concurring specially). Specifically, he suggested that courts might be able to find that a statutory trust exists in successful wrongful-death actions brought by a personal representative and that the finding of such a trust would allow the

**16**

representative to collect a trustee's fee, <u>see</u> <u>id</u>. at 1046 (Bolin, J. concurring specially).

In proposing this alternative, however, Justice Bolin made clear that his proposal was just that: a "proposal," a "potential alternative." Indeed, he expressly "concur[red] in the main opinion and the result reached therein." <u>Id</u>. at 1044 (Bolin, J. concurring specially). In the face of an express holding by the Alabama Supreme Court that, under the circumstances presented here, there is no right to a personal-representative fee under state law, this court is unwilling to rely on an alternative proposal by only one justice that might allow the contrary. Therefore, the plaintiffs' request for payment of a personal-representative fee will be denied.

Moreover, it cannot be overlooked that, while Burns is not recovering a "fee" for her work in this case, she is still being greatly rewarded: All the time and

17

energy she has expended has been for the benefit of her beloved daughter.

***

Accordingly, it is ORDERED, ADJUDGED, and DECREED as follows:

(1) The judgment dismissing the Huddle House defendants (doc. no. 89) is vacated. The Huddle House defendants--D&L Foods, Inc., Daniel Yates, Lynn Patterson, LeGina Watson, and Huddle House, Inc.--are reinstated.

(2) The motion to approve the settlement agreement (doc. no. 95) is granted.

(3) The "Settlement Agreement and Release of All Claims" with Alexander City defendants (doc. no. 95-1) is approved.

(4) The "Pro Tanto Release and Settlement" with the Huddle House defendants (doc. no. 101) is approved.

(5) The guardian ad litem, Honorable Linda Benson, is entitled to a fee of $ 4,000.00 to $ 5,000.00. The

guardian ad litem fee is to be paid out of the plaintiffs' counsel fee recovery.

   DONE, this the 2nd day of June, 2016.

                    /s/ Myron H. Thompson
                    UNITED STATES DISTRICT JUDGE